Matthias, J.
The question of first importance in this case arises from the contention of counsel for the plaintiff in error, that, assuming the evidence established the claimed breach of warranty as to the quality of the product sold and delivered, the only possible basis of recovery by the defendant in error, plaintiff in the trial court, is the difference between the value of such product as warranted and *512 as actually delivered. This question was raised by the refusal of the trial court to give to the jury the instruction requested and also by exceptions to the general charge.
The questions of what the warranty as to quality actually was and whether there was a breach thereof were questions of fact which were submitted to the jury by the trial court with instructions which were correct in all respects, and the findings upon these questions of fact were for the plaintiff and against the defendant.
We come then to the question of the rights' of the buyer and the seller under such circumstances as disclosed by the record of this case, and also the remedy of a purchaser of goods which do not measure up to the warranty of the seller thereof as to quality, the purchase price having been paid upon delivery of the bill of lading and before opportunity for inspection.
Under the provisions of Section 8449, General Code, when there is a breach of warranty by the seller, the buyer may, at his election—
“(a.) Accept or keep the goods and set up against the seller, the breach of warranty by way of recoupment in diminution or extinction of the price;
“ (b.) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty;
“ (c.) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty ;
“ (d.) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have *513 already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid.”
It is further provided by this section that “(2.) When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy therefor can be granted.”
It is perfectly clear that the plaintiff elected to pursue the remedy afforded by subdivision “d” above quoted. If the facts are such as to entitle the buyer to the remedy of rescission, what shall be his method of procedure? That is prescribed by subdivisions 4 and 5 of Section 8449, General Code, as follows:
“ (4.) When the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price.
“(5.) When the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods, as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by section 8433.”
It is averred in the petition and admitted in the answer that the defendant refused to accept the re *514 turn of the product, and refused the request of the plaintiff for shipping instructions, and also plaintiff’s request for the repayment of the amount paid the defendant therefor. Hence, under the statutory provision above quoted the plaintiff thereafter held the product as bailee for the seller, subject to plaintiff’s lien to secure the repayment of the money plaintiff had paid the defendant, which lien could be enforced in the manner provided by Section 8433, General Code, but the right of the plaintiff to recover is specifically provided by subdivision 4, above quoted. There having been a breach of the warranty, and the plaintiff having elected to rescind the sale for that reason, and offered to return the goods in exchange for the repayment of the amount he had paid therefor, the defendant immediately became liable to the plaintiff for such sum. When that liability arose and the defendant refused the demand for such payment, plaintiff’s cause of action accrued, and this provision of Section 8449, General Code, definitely fixes and prescribes the measure of plaintiff’s recovery, to-wit, the amount plaintiff had paid to defendant. However, the plaintiff instead of immediately instituting an action to recover the full amount of its purchase price deferred such action pending its effort to make sale of the car of grease stearine still left in its possession by the defendant and to apply the proceeds thereof to the discharge of its claim. Under the provisions of Section 8449 the plaintiff was required to exercise reasonable care and judgment in making such resale, but could make it either at public or private sale.
Passing for subsequent consideration the question of the legality of the sale of the car of grease stearine, and for the present assuming its regu *515 larity, it must be concluded that the measure of the plaintiff’s recovery in this action was the difference between the amount realized from the sale of such product and the purchase price thereof, paid to the defendant. No prejudice could therefore arise from instructing the jury before argument in accordance with request No. 5 of counsel for plaintiff, where the court said that “Rescission has the legal effect of entitling each of the parties to the contract to be restored to the condition he was in before the contract was made, so far as that is possible;” nor from the statement made by the court in the general charge, wherein the court said, “the measure of damages in such case of breach of warranty as provided by law in this state is the loss directly and naturally resulting in the ordinary course of events from the breach of the warranty.”
It is the further contention of counsel for plaintiff in error that the sale of the car of grease stearine by the plaintiff to itself was irregular and invalid, and, for the reason that plaintiff kept the same, the measure of plaintiff’s recovery was the difference in- value between the article delivered and the article as warranted, and that the values must be ascertained as of the time of delivery to the plaintiff. To support the contention of invalidity of such sale numerous cases are cited, but reliance is chiefly placed upon Cullen v. Blimm, 37 Ohio St., 236, and Glidden v. Mechanics’ Natl. Bank, 53 Ohio St., 588.
In Cullen v. Blimm, supra, a resale of property was similarly made after breach of warranty and election to rescind. The court says in discussing the case, page 238: “"Whether a purchase by an agent or trustee at his own sale is, in the absence of *516 statutory provisions, void or only voidable * * * is a question which we need not determine, for Cullen & Co., upon being informed of such resale, objected to it, and thereby effectually avoided it.” And the court held that “Objection to such resale having been made by Cullen & Co., it became and was wholly invalid. ’ ’ The fact that the sale in that case made by the vendor to himself was “against the objection of the vendee” is specifically stated in the syllabus and made a part of the rule of law therein set forth.
In the case of Glidden v. Bcmk, supra, it was held that while the pledgee could not become the purchaser at his own sale in the absence of an express agreement authorizing it, and the relations of the parties are not changed unless the pledgor elects to treat the transaction as a valid sale, if the pledgor does not so elect, the pledgee, while he retains the possession and control of the property with the ability to perform his part of thé contract by restoring the property to the pledgor, cannot be held for its conversion without demand for its return accompanied by an offer of the pledgor to perform his part of the agreement. In this case as in the case of Cullen v. Blimm, supra, the sale was either objected to or repudiated by the pledgor, and the record clearly shows that fact as well as the offer by the pledgor to perform the contract, and such facts were influential, if not controlling, in the disposition of those cases.
It may be assumed that a purchase by a bailee at a sale to satisfy his lien is invalid. Yet in this case it does not appear that the defendant either objected to the sale or repudiated the same, and neither in its pleading nor otherwise has the defendant indicated *517 a purpose or desire to retake said product and repay the plaintiff, or to take the product at the market price and pay the plaintiff the difference between the market price and the contract price. It is difficult to understand the attitude of the defendant in this transaction. It first complains that the plaintiff did not wait a reasonable time before making such resale and then complains that such sale was delayed until the demand had fallen off and the market value had depreciated, but the fact remains that the defendant refused to accept the return of the product when tendered and also refused to make an offer for it when the plaintiff attempted to sell it.
The record discloses that the very day of delivery, the plaintiff, through the broker who made the sale, informed the defendant of his claim that the product delivered was not the product contracted for, and five days later demanded the return of its money, and offered to return the car or follow shipping instructions which were then requested. A week later another demand was made for the return of the purchase price and shipping instructions again requested. Some efforts were made to dispose of the controversy by arbitration, but failed, and thereupon plaintiff sent samples of the grease stearine to several large consumers and also to brokers who handled such products, with request for bids. Only one bid was received which was 9% cents per pound. The defendant was thereupon (January 4th) advised of the same, and its offer solicited, but no response having been received by the plaintiff, it, on January 11th, bought it at 10 cents per pound, giving the defendant credit for the amount upon plaintiff’s claim against it: The evidence tends to show not only the exercise of reasonable care and judgment, but the utmost care and *518 diligence as well as good judgment in the making of such resale, and that the price paid by the plaintiff and credited to the defendant was more than could be procured elsewhere. In the absence not only of an offer by the defendant, but also of any objection to or repudiation of such sale, and an offer to satisfy the lien of the plaintiff under the statute, and in the absence of any claim that such resale was for less than the market value then or subsequently, it is impossible to find that there was any prejudice to the defendant in the maimer of disposition of such product.
The instruction requested by counsel for defendant, being defendant’s request No. 5, and which appears in full in the statement preceding this opinion, was not proper, hence no error was committed in the refusal to give it to the jury, for the reason that the mere fact of a secret arrangement between the broker and the plaintiff whereby the plaintiff was to receive a part of the broker’s commission would not in and of itself defeat the plaintiff’s claim against, the defendant for repayment of his money upon a breach of warranty. If it amounted to a fraud it would not render the contract void, but only voidable, and the defendant not only did not seek to avoid the contract of sale, but is here relying thereon to retain the money paid by the plaintiff and to defeat his action to recover it.
Upon the whole case we find no prejudicial error. The judgment of the court of appeals is, therefore, affirmed.

Judgment affirmed.

Johnson, Wanamaker and Jones, JJ., concur.
Robinson, J., concurs in propositions 1, 2 and 3 of the syllabus.